UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| PAULA MOTT<br>obo T.M. | CIVIL ACTION NO. 06-0682 |
| VS. | JUDGE MELANÇON |
| COMMISSIONER SOCIAL SECURITY<br>  ADMINISTRATION | MAGISTRATE JUDGE METHVIN |

*REPORT AND RECOMMENDATION*

Before the court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be **AFFIRMED**.

*Background and Administrative Record*

Paula Mott is the custodial guardian of her grandson, T. M., who was born on February 19, 1991.  T.M. began receiving SSI benefits in 1994 due to mild mental retardation and Attention Deficit Hyperactivity Disorder ("ADHD").[1]  Benefits were continued, following a periodic review, on February 18, 1999, based upon a finding that T.M. met the listing for seizure disorder (§ 111.03 of Appendix I, Subpart P, Regulations No. 4).[2]

T.M.'s case came up for another periodic review in 2003, and on March 6, 2003, SSA sent a Notice of Disability Cessation letter notifying Mott that T.M.'s benefits would terminate as of May 31, 2003 due to medical improvement of his impairments.[3]  Mott requested

---

[1] Tr. 42A.

[2] Tr. 51A.

[3] Tr. 53A.

2

reconsideration and on May 6, 2005, a hearing was held before an Administrative Law Judge.[4]
Mott was unrepresented at the hearing.

On August 26, 2005, the ALJ issued a decision finding that as of March 1, 2003, T.M.
was no longer disabled because his condition had medically improved.[5]  The Appeals Council
denied review, making the ALJ's decision the final decision of the Commissioner from which
Mott now appeals.

### Issues Presented

Mott argues that the ALJ denied her due process of law by violating HALLEX, I-2-6-
52(A) requiring that the ALJ issue an opening statement regarding representation and by
providing her with a misleading and defective notice regarding her right to subpoena witnesses
and cross-examine witnesses who provide post-hearing reports.  Additionally, Mott maintains
that the ALJ failed to fully and fairly develop the record.

### Standard of Review

This court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether
the Commissioner's decision is supported by substantial evidence in the record; and (2) whether
the decision comports with relevant legal standards.  Anthony v. Sullivan, 954 F.2d 289, 292
(5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994).  Substantial evidence is
"...more than a mere scintilla.  It means such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).
The court may not reweigh the evidence in the record, nor substitute its judgment for that of the

---

[4] Tr. 23-34.

[5] Tr. 22.

3

Commissioner, even if the preponderance of the evidence does not support the Commissioner's conclusion.  <u>Johnson v. Bowen</u>, 864 F.2d 340, 343 (5th Cir.1988).  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision.  <u>Id.</u>

***Waiver of Right to Representation***

Mott argues that the ALJ violated her due process rights by allowing her to proceed without representation at the hearing.  The record shows the following colloquy with respect to her representation at the administrative hearing:

ALJ:          Now in making the application, I don't see any record of, in years past, of the family having used a representative or an attorney. What – in years past, have you all used anybody from legal services or used attorneys or anybody to help with the application?

WIT #1:      No.  Never did.

ALJ:          You've been advised before and advised here today –

WIT #1:      Yes, we have.

ALJ:          – that, that there was no one we can appoint to assist you with this.

WIT #1:      Right.

ALJ:          It's just simply a matter of you making those arrangements if you could.

WIT #1:      Yes.

ALJ:          Is the child continuing in benefit status?  This is to say are you still getting a check you know for him?

WIT #1:      Yes.  Yes.

ALJ:          Under those circumstances, it makes it difficult to, to get someone who, who relies on a fee to represent you and the child in pursuing the application, because there's not a back due benefit.  As long as the

4

benefit continues, then there's not anything to accumulate for them to take a share of.  Under those circumstances about the only chance to get anybody to assist with it is if the legal services offices or someone that you referred to by the bar who would do it on, on a pro bono basis and would handle it for free.  Have you ever talked with anyone at legal services to see if –

WIT #1:     No, sir.  I never have.

ALJ:        – if they would assist in it?  I don't think there's one actually in Crowley, but three would be one close by, including here in Lafayette that, that could, could assist with that if you were so inclined.

***

ALJ:        And as I say, now whether, whether they could or would take a file, I don't really have any way of, of knowing that.  It's just simply an issue as to whether they would have the, the staff to take on the file.  And whether they would feel like it's a worthwhile file to take one.  And just generally what you know – whether it meets their screening criteria as to whether they can take it on at any particular time.  They do a number of them.  As far as your choice at this point would be whether to go ahead as your own representative, and if in order to have it postponed to see if, if you wanted to talk with anyone.  But see if they – if the legal services office would review the file with you and assist with it.  What – you all have a preference on that?

***

WIT #1:      Yeah.  Okay.

ALJ:        And it would be best to try to get one instead of representing yourself.

WIT #1:     Oh.

ALJ:        You have that opportunity.  Now, what I come down generally about once a month.  It could be set over for this next month, if it weren't set for this next month, it might be July.  I'm not sure.  But once it was rescheduled, we'd need to go ahead with the hearing.  Either with the representative or, or without.  And it would be necessary for you to come back and at that time, with, with the child.

***

5

ALJ:            As, as far as your representative is concerned, what, what you're
                thinking.  Would you like to put it over?

WIT #1:         Yes.  Yes, sir.

***

ALJ:            The lady will sit down here with you to see what additional records there
                are to get.  And probably what we'll do is our office will probably go
                ahead and order those ourselves.  If the legal services office takes the file
                on then they, they can assist in getting them.  That's fine.  But in the
                meantime, we can order them so that we can be fairly assured that when
                we come back, that we when we come back, that we would have those
                additional records.

***

ALJ:            Let's see.  I've added to the record here, Exhibit 73, which is a
                memorandum concerning continuance of the hearing.  And exhibit 74,
                which is a current listing of medications that the ladies have worked with
                us to prepare and, and put into the record.  Now, when, when you leave,
                want also to send you some – a questionnaire there for one of the teachers
                to fill out between then and the school year.  And mail back to us at the
                office in Alexandria.  And we'll give you an, an envelope that, that they
                can mail it back without there being any, any expense or postage. *** [6]

The hearing was rescheduled for August 1, 2005.  Mott was again unrepresented and she

explained that she had contacted the Legal Services Office, however:

A.              – but they could not take the case because they had so many other cases.


Q.              Okay.  And was there anyone else –

A.              Yes.

***

A.              They weren't the only ones I tried to get.  I tried to get other lawyers but
                some of them were going on vacation and they would refer me to
                someone else but it seemed like –

---

[6] Tr. 27-31.

6

Q.          Okay.

A.          – it was just too short a time.[7]

The ALJ proceeded with the hearing.  The record includes a Waiver of Representation By the Claimant, signed by Mott on August 1, 2005, as well as a Waiver By Claimant to Provisions of Privacy Act of 1974 Pertaining to Evidence Received Subsequent to the Hearing.[8]

Due process requires that a disability benefits recipient be given notice and an opportunity to be heard before his entitlement to benefits may be terminated.  Mathews v. Eldridge, 424 U.S. 319, 332-333, 348-49, 96 S.Ct. 893, 901-902, 909-10, 47 L.Ed.2d 18 (1976). Under the Regulations, claimants have a right to appear at a hearing, and if the claimant has good cause, the ALJ shall reschedule the hearing.  20 C.F.R. § § 404.950 and 404.936. Additionally, a claimant has a statutory right to counsel at a Social Security hearing.  42 U.S.C. § 406.

In her first brief filed in this matter, Mott argued that the ALJ violated Mott's due process rights at the administrative hearing by failing to fully and fairly advise her of her right to representation, and to obtain a waiver of representation.[9]

---

[7] Tr. 609-610.

[8] Tr. 601-602.

[9]  Plaintiff's brief states, in pertinent part:

Plaintiff contends that despite her implicit request for more time to permit an attorney or representative to prepare the case, the record fails to support a conclusion that the ALJ either sought waiver during the August 1, 2005 hearing, or that Plaintiff waived her right to representation.  Pointedly, this record simply does not contain an inquiry by the ALJ which directly asks Plaintiff whether she waived her right to representation.  Absent an explicit inquiry by the ALJ or an explicit waiver by Plaintiff, there exists no evidence to sustain the ALJ's conclusion that Plaintiff agreed or desired to proceed without an attorney or representative. ***
Additionally, the ALJ simply failed to fulfill his statutory duty to fully and fairly advise Plaintiff,

7

In response, the Commissioner pointed out that the record contains two signed waivers by Mott.[10]

In a reply brief, Mott does not explain the previous inaccurate claim that the record contained no waiver of representation, nor does she withdraw the due process argument. Instead, Mott argues that, independent of the written waiver, the ALJ violated HALLEX, I-2-6-52(A), by failing to "*secure on the record, the claimant's decision concerning representation.*"[11]  In fact, this purported HALLEX language is a mis-quote of the current provision, which states:

> Once the ALJ has determined that the claimant is capable of making an informed choice, he or she will *either secure on the record the claimant's decision concerning representation, or obtain from the claimant a written waiver of the claimant's right to representation*, which will be marked as an exhibit.

HALLEX, I-2-6-52(A) (emphasis supplied).[12]

A review of the record shows that the ALJ complied with HALLEX I-2-6-52(A).  The ALJ advised Mott of her right to counsel at the hearing on May 6, 2005.  The ALJ advised Mott of different options she had of retaining counsel by either contacting the Legal Services Offices

---

during August 1, 2005 hearing, of her right to representations.  HALLEX, I-2-6-52(A).

Rec. Doc. 12 at p.p.s. 5-6.

[10] Rec. Doc. 15 at p. 5, citing Tr. 573 (unsigned) and 601.

[11]  The mis-quoted language appears in a footnote in Mr. Oelker's brief, Rec. Doc. 18 at p.2, where he contends the  HALLEX rule reads as follows:

> "Once the ALJ has determined that the claimant is capable of making an informed choice, he or she will *secure, on the record, the claimant's decision concerning representation*.  The ALJ will enter into the record the acknowledgment letter and enclosure(s) sent to an unrepresented claimant only if the claimant elects to precede pro se at the time of the hearing."

See footnote, Rec. Doc. 18 at p. 2.  Emphasis in original.

[12] The undersigned notes that this raises the issue of potential Rule 11 violations.

8

in Lafayette or possible area bar associations for referrals to attorneys who perform pro bono legal work.  The ALJ afforded Mott three months to have retain counsel.  At the beginning of the hearing on August 1, 2005, the ALJ inquired about Mott's attempts to have counsel appear. Mott argues that her explanation – that some attorneys stated that they could not take the case because they did not have time to prepare – was an implicit request for a continuance of the hearing.  However, the record shows that Mott did not request a continuance nor did she in any way object to proceeding with the case on that date.  Moreover, the ALJ was not required to provide a second continuance and further delay the matter.

The ALJ determined that Mott could make an informed decision regarding representation (the ALJ pointed out that Mott had successfully represented herself in the original application) and obtained a written waiver from Mott.[13]  This is clearly compliant with HALLEX, I-2-6-52(A).

The record provides no basis to conclude that Mott's waiver of counsel was not intelligent or informed. Considering the foregoing, the undersigned concludes that the ALJ did not violate Mott's due process rights concerning her decision to forego representation.

### Right to Cross-Examination, Issuance of Subpoenas

Mott argues that the ALJ violated her due process rights because he did not advise her that she had the right to subpoena and cross-examine witnesses who provided post-hearing evidence.

---

[13] The Waiver Form states: "I understand my right to representation at the hearing.  I voluntarily waive that right, and I request to proceed without a representative.  I also acknowledge that I received the attached list of organizations prior to receiving the Notice of Hearing."  Tr. 573, 601.

9

Once again, Mott's legal citations are incorrect.  Mott argues that the ALJ must advise the claimant of her right to automatic issuance of subpoenas and cross-examination as follows:

> Similarly, the Commissioner's waiver of the right to inspect post-hearing evidence is constitutionally invalid since it does not advise Plaintiff that if she seeks the right to a subpoena, the ALJ must issue the subpoena. *Lidy v. Sullivan,* 911 F.2d 1075 (5th Cri. 1990).
>
> ***
>
> Here, the Commissioner's waiver regarding the right to inspect post-hearing evidence which does not contain "notice" that a subpoena request of the reporting physician is absolute or automatic, is invalid; additionally, the ALJ violates the Commissioner's binding Acquiescence Ruling, when he accepts such a defective waiver. *Waters v. Barnhart*, 276 F.3d 716 (5th Cir. 2002), N.4; *Newton*, supra; *Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001); *Lidy*, cupra.
>
> Succinctly, Plaintiff cannot decline a right unannounced in the waiver itself. *Tanner*, supra; *Cuellar*, supra.[14]

A reading of the above gives the impression that there is legal precedent stating that the ALJ violates a claimant's due process rights if he does not explicitly advise of the right to cross-examination and issuance of subpoenas prior to obtaining the waiver of right to inspect evidence.  The cases cited by Mott, however, do not provide such precedent.  Although Lidy does hold that the there is an automatic right to the issuance of subpoenas upon request, there is no implication that the ALJ has to advise the claimant of same.

Likewise, Waters, Newton, and Myers do not even address the issue regarding waiver. The footnote in Waters simply acknowledges that the claimant's allegation regarding constitutional violations was moot.  Waters, 716 F.3d at 720 FN. 4.  The only relevance that Newton has is that it provides that HALLEX guidelines do not carry the authority of law, however, the agency must follow its own internal procedures.  Newton, 209 F.3d 448, 459 (5th

---

[14] Rec. Doc. 18 at pps. 4-5.

10

Cir. 2000).   While <u>Myers</u> holds that Social Security Rulings are, contrary to Mott's quote, *not* binding on this court.  <u>Myers</u>, 238 F.3d at 620.

Similarly, <u>Tanner</u> provides that a claimant has the right to cross-examine witnesses who provide post-hearing evidence, however, it does not state that the claimant has to be specifically advised of that right.  <u>Tanner v. Sullivan</u>, 911 F.2d 1075 (5th Cir. 1990).  <u>Ceullar</u> acknowledges that due process affords a meaningful opportunity to be heard, however, it does not address social security cases or the issues presented herein.  <u>Cuellar v. Texas Employment Com'n</u>, 825 F.2d 930 (5th Cir. 1987).

Thus, the cases cited by Mott establish that upon request by a claimant, the ALJ must subpoena witnesses who provide post-hearing evidence so that the claimant can cross-examine them.  There is no support, however, for the argument that the burden is on the ALJ to advise the claimant of those rights, when the issue is not even broached by the claimant.

Mott has not established that the ALJ in any way violated her due process rights.  Mott did not request that subpoenas be issued, therefore, the ALJ had no duty to do so.  *See* <u>Lidy supra</u>.  Moreover, a review of the record shows that Mott was given notice of her right to have subpoenas issued upon request.[15]  Although the Notice deals with the general rule regarding subpoenas of witnesses for the hearing and does not specifically advise that a request to subpoena witnesses who provide post-hearing evidence is automatically granted, the fact remains that Mott knew that the ALJ had subpoena power, yet she did not request that any subpoenas be issued.

Likewise, the record clearly demonstrates that Mott waived her right to inspect any evidence submitted post hearing.  There is no dispute that Mott understood that her waiver

---

[15] Tr. 597.

11

meant she could not inspect or view the evidence.  Since Mott was not entitled to inspect the

evidence, it follows that she also could not question the witnesses who provided the evidence.

More importantly, Mott has not established how she was prejudiced by the ALJ's

actions.  Mott has not provided any information regarding what information would have been

garnered from such subpoenas or cross-examination.

Considering the foregoing, the undersigned concludes that this alleged error is without

merit.

### *Development of the Record*

Mott argues that the ALJ erred in failing to obtain medical records from Dr. John Kevill.

An ALJ's "basic obligation to develop a full and fair record rises to a special duty when

an unrepresented claimant unfamiliar with the hearing procedures appears before him."  Kane v.

Heckler, 731 F.2d 1216, 1219-20 (5th Cir. 1984).  This duty requires the ALJ to "scrupulously

and conscientiously probe into, inquire of, and explore for all the relevant facts."  Kane, 731

F.2d at 1220.  The Kane court also noted:

> The failure of the ALJ to develop an adequate record is not, however, ground for
> reversal per se.  As in the case of a hearing held without waiver of the right to
> counsel, the claimant must, in addition, show that she was prejudiced as a result
> of scanty hearing.  She must show that, had the ALJ done his duty, she could and
> would have adduced evidence that might have altered the result.

Id.

Mott maintains that the ALJ failed in his obligation to explore and develop the facts of

this case.  She argues that the ALJ failed to obtain current medical records from Dr. Kevill

whom she advised the ALJ had recently begun treating T.M.  It is notable, however, that Mott

offers no evidence to support her claim that such information, if obtained, would have changed

the ALJ's conclusion.

12

The regulations provide a method by which an appellant may submit evidence to the court to show prejudice by an ALJ's alleged failure to develop the record.  Under 42 U.S.C. §405(g), a claimant seeking judicial review may submit new and material evidence supporting a request for remand.   "[I]n order to justify a remand, the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding." Leggette v. Chater, 67 F. 3d 558 (5th Cir. 1995), citing,  Bradley v. Bowen, 809 F.2d 1054, 1058 (5th Cir.1987) (per curiam).  The new evidence must pertain to the contested time period and not merely concern a subsequently-acquired disability or the deterioration of a condition that was not previously disabling. Id.  For such new evidence to be material, there must exist a reasonable possibility that it would have changed the outcome of the Secretary's determination. Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir.1981).

Thus, if material evidence existed which was not considered by the ALJ due to his alleged failure to develop the record, Mott could have submitted it for consideration in support of her argument that she was prejudiced.  Mott fails to make any such showing, nor does she even argue the point.  Thus, Mott concedes that she has no evidence that would assist her in this case.

### *Warning to Counsel for Mott*

As discussed throughout this Report, counsel for Mott has repeatedly misled the court by stating incorrect facts and misquoting the law.  The fact that counsel specifically stated that "the record fails to support a conclusion that ... Plaintiff waived her right to representation"[16] despite the fact that the record contained two waivers by Mott is troublesome.  This is magnified by the fact that counsel did not withdraw or otherwise correct this misstatement once the Commissioner pointed out the existence of the waivers.  Equally problematic is counsel's complete misquote of

---

[16] Rec. Doc. 12 at p.p.s. 5-6.

HALLEX, I-2-6-52(A) omitting the portion which supported the ALJ's decision in this case.  t is unclear, however, whether counsel intended this.  Accordingly, no action is recommended on the instant issues, however, counsel should be warned that future transgressions may be treated as Rule 11 violations.  Thus, counsel is encouraged to scrupulously review all briefs submitted to this court.

### Conclusion

Considering the foregoing, it is recommend that the Commissioner's decision be **AFFIRMED.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir.  1996).**

Signed at Lafayette, Louisiana, on August 22, 2007.

Mildred E. Methvin
United States Magistrate Judge